STATE OF SOUTH CAROLINA           )
                                  )     SETTLEMENT AGREEMENT
COUNTY OF CHARLESTON              )

Whereas, Colette Winters (hereinafter referred to as "Creditor") and Frederick Scott Alderson (hereinafter referred to as "Debtor") (hereinafter collectively referred to as "Parties") were previously married, the bonds of matrimony having been dissolved by an Order of the Family Court for the Ninth Judicial Circuit, Charleston, SC (hereinafter referred to as "Family Court"); and

Whereas, in a proceeding prior to the divorce proceeding, the Parties entered into an Agreement that was approved by an Order of the Family Court on April 8, 2016 (hereinafter referred to as "CSA"); and

Whereas, certain defaults were made in the payment of the obligations by the Debtor to the Creditor under the terms of the CSA and certain of the defaults were still pending at the time the Debtor filed a Chapter 11 bankruptcy case with the Bankruptcy Court for the District of South Carolina, Charleston Division (hereinafter referred to as "Bankruptcy Court"), filed on March 19, 2018, as Bankruptcy Case Number 18-01358 (hereinafter referred to as "Bankruptcy Case"); and

Whereas, the Debtor owes the Creditor $2,868,000.00 in outstanding payment obligations originating from the CSA, as well as $76,000.00 to the children's 529 plans (also included in the CSA), and the Debtor has agreed to pay $40,000.00 towards the total attorney fees incurred by the Creditor in connection with the filing of the Bankruptcy Case and $10,000.00 as more fully described below in paragraph 24 (hereinafter collectively referred to as "Creditor's Claim"); and

Whereas, Debtor may owe the Creditor a bonus payment up to $2,000,000.00 which commences if Debtor receives Future Income (as defined at paragraph d. on page 16 of the CSA, except that the date for the final calculation is extended to December 31st, 2024) from any of his entities in excess of $8,550,000.00 (the "Bonus Payment") as further described in paragraph 12 herein; and

Whereas, the parties now desire to enter into a Settlement Agreement (hereinafter referred to as "Agreement") which will resolve all outstanding pre-bankruptcy petition payment issues amongst the Parties, with the exception of fees and costs of either party relating to the pending custody action 2018-DR-10-248; expenses of the children pursuant to the CSA; and

1

Whereas, the Parties have agreed to allow the Debtor 42 months from the date the Debtor makes his first payment due under the Agreement to pay the Creditor's Claim in full (hereinafter referred to as the "Maturity Date"); and

Whereas, the Parties enlisted the services of Dixon Hughes Goodman LLP (hereinafter referred to as "Dixon Hughes") to compile a report (hereinafter referred to as "Dixon Hughes Report") by analyzing the payment plan proposed to Creditor in accordance with this Agreement and identifying ongoing cash flow expectations; and

Whereas, during the proceedings in the Family Court, the Creditor was represented by Marie-Louise Ramsdale (hereinafter referred to as "Creditor's Counsel"). During the Bankruptcy Case, the Creditor was represented by George Cauthen of Nelson Mullins Riley & Scarborough LLP (hereinafter referred to as "Nelson Mullins"); and

Whereas, during the proceedings in the Family Court, the Debtor was represented by Anne Frances Bleecker (hereinafter referred to as "Debtor's Counsel"). During the Bankruptcy Case, the Debtor was represented by Kevin Campbell of Kevin Campbell Law Firm; and

Whereas, the automatic stay is modified in accordance with the Interim Consent Order Granting Relief from Stay to Continue or Pursue Action in Family Court entered by the Bankruptcy Court on May 22, 2018 (Docket No. 48).

Now, therefore, for and in consideration of these promises and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. The total of the Creditor's Claim that is owed by the Debtor is $2,994,000.00.

2. Both the Creditor's Claim and the Bonus Payment shall be non-dischargeable and excepted from the entry of any discharge order in the Bankruptcy Case and any subsequent bankruptcy cases or any action in the Family Court.

3. Payments made by the Debtor to the Creditor will be made by direct deposit by the Debtor to a bank account previously identified by Creditor to Debtor. In the event that the Creditor would desire that this bank account be changed, she will provide a notice of at least 30 days, by certified mail, to the Debtor.

4. Until the Creditor's Claim is paid in full, the Debtor will place all money he receives into his existing DIP account only and will make all payments to the Creditor from this account. The Debtor will provide Creditor, through Creditor's Counsel, a copy of the Debtor's Quarterly Periodic Report and Monthly Operating Report, which includes a DIP account statement and copies of written checks, and copies of any documents required to be filed with any federal

2

or state taxing entity every month until the Bankruptcy Case is dismissed, converted, or otherwise terminated by order of the Bankruptcy Court. If the Bankruptcy Case is dismissed, the DIP account will be converted into a trust account with the Creditor as the only beneficiary, and the Debtor will continue to place all money he receives into this trust account only and will make all payments to the Creditor from this trust account until the Creditor's Claim is paid in full. The Debtor will continue to provide Creditor, through Creditor's Counsel, the full account statement for this trust account, including copies of written checks and copies of any documents required to be filed with any federal or state taxing entity, every month until the Creditor's Claim is paid in full. In addition, the Debtor will provide a Monthly Operating Report and Quarterly Periodic Report to Creditor through Creditor's Counsel until Creditor's Claim is paid in full. If the Bankruptcy Case is converted, the DIP account will become property of the Chapter 7 Trustee.

5. Until the Creditor's Claim is paid in full, Debtor will pay Creditor a minimum of $10,000.00 per month due on or before the 5th calendar day of each month, with the first payment due on the date the Agreement is executed amongst the parties with no late payment permitted as to that initial payment, and continuing each month thereafter. These payments will be applied toward the Creditor's Claim and will continue for 42 months including Debtor's first payment due under the Agreement _or_ until the Creditor's Claim is paid in full, whichever occurs earlier. Payments will be applied first to reimburse Creditor for the $50,000.00 in fees provided for herein; then to the equitable division payments due; then to 529 plan payments due; and then to alimony due. These payments will be paid by the Debtor directly or from the distributions as set forth below, with the funds directly deposited into the Creditor's above-referenced checking account, subject to the provision of paragraph 7.

6. Each monthly payment (due on the 5th calendar day of each month following the month this Agreement is executed) will have a 30-day drop dead provision while the Debtor remains in bankruptcy and a 20-day drop dead provision after the Bankruptcy Case is dismissed.

7. After the Agreement has been signed by the parties, but prior to the Agreement being approved by the Bankruptcy Court, all payments made by the Debtor will be paid directly to Nelson Mullins. The payments will be held in trust until such time as the Agreement has been approved by a final order of the Bankruptcy Court. If the Agreement is approved by the Bankruptcy Court, then Nelson Mullins will distribute the money to the Creditor to be applied in accordance with the terms of the Agreement. If the Agreement is not approved by the Bankruptcy Court, then it will be held by Nelson Mullins until further order of the Bankruptcy Court or upon further agreement of the parties. If the Agreement is not approved by the Bankruptcy Court, then either of the Parties may, at their option, consider



3

this Agreement to be terminated, although the Creditor will not oppose a request by the Debtor for a 90-day extension to file a plan and disclosure statement.

8. Debtor will issue a note and mortgage on the property located at 23 John Galt Way, Mount Pleasant, South Carolina 29464 (hereinafter referred to as "John Galt Property") to secure the full amount of Creditor's Claim. This note and mortgage will be prepared at Debtor's expense by Lisa Wolff Herbert. Within thirty (30) days after the execution of this document by the Parties, the Debtor will provide the fully executed note and mortgage to Nelson Mullins to be held in trust unless and until the Agreement is approved by the bankruptcy court, at which time Nelson Mullins may record the mortgage with the Registrar of Deeds for Charleston County. On the date the Agreement is executed, Debtor will execute an affidavit that the balance of the mortgage on the John Galt Property does not exceed $1,560,000.00 and that there are no other liens against the John Galt Property other than the first mortgage. Debtor shall not otherwise encumber the John Galt Property until the Creditor's Claim is paid in full. *See* Dixon Hughes Report, at p. 2.

9. Commencing the date the Agreement is executed and continuing until the Creditor's Claim is paid in full, the Debtor will provide Creditor with a properly recorded and perfected lien on Global Financial Services Consulting LLC (hereinafter referred to as "GFS"), a copy of which is attached, which will be prepared by Nelson Mullins at Creditor's expense. These documents will be signed within thirty (30) days after the Agreement has been executed by the Parties and delivered to Nelson Mullins to be held in trust unless and until the Agreement is approved by the bankruptcy court, at which time Nelson Mullins will record the documents in the proper recording office at Debtor's expense. GFS owns the following assets:

| | |
|---|---|
| SJ Management LLC | ($675,000.00 loan outstanding + 20% equity) |
| Cloverlight LLC | ($1,250,000.00 loan outstanding + 16% equity) |
| Watertech Holdings LLC | ($550,000.00 loan outstanding) |
| Select Ventures Fund I LLC | ($120,000.00 Capital Account Value) |

Debtor agrees not to change the name or the ownership of GFS or transfer GFS's ownership in the above entities without Creditor's approval. Debtor agrees to provide notice to Creditor's counsel of any of the companies' intent to transfer assets other than in the ordinary course of their business for an amount that exceeds $5,000.00 within ten (10) days of the receipt of such notice.

4

Until the Creditor's Claim is paid in full, within ten (10) days of receipt, Debtor will pay Creditor 70% of any Future Income (as defined at paragraph d. on page 16 of the CSA but also including repayment of loans/return of invested funds) related to the aforementioned entities (*See* Dixon Hughes Report, at p. 2). This payment will be subject to a 30-day drop dead provision while the Debtor remains in bankruptcy and a 20-day drop dead provision after the Bankruptcy Case is dismissed.

10. Until the Creditor's Claim is paid in full, within ten (10) days of receipt, Debtor will pay Creditor 40% of any Future Income (as defined at paragraph d. on page 16 of the CSA, excluding gross W-2 wages from NanoPure, LLC (hereinafter referred to as "NanoPure"); such excluded gross wages not to exceed more than $20,000.00 per month, but also including repayment of loans/return of invested funds) related to either the sale of his 10% ownership in NanoPure or 40% of any monies paid to Debtor directly from NanoPure, excluding said gross W-2 wages, such excluded gross wages not to exceed $20,000.00 per month. *See* Dixon Hughes Report, at p. 2. This payment will be subject to a 30-day drop dead provision while the Debtor remains in bankruptcy and a 20-day drop dead provision after the Bankruptcy Case is dismissed.

11. Until the Creditor's Claim is paid in full, within ten (10) days of receipt, Debtor will pay Creditor 40% of any Future Income (as defined at paragraph d. on page 16 of the CSA but also including repayment of loans/return of invested funds) from Infinite Resource Solutions (together with NanoPure, GFS, and its subsidiaries, hereinafter collectively referred to as "Companies"). *See* Dixon Hughes Report, at p. 2. This payment will be subject to a 30-day drop dead provision while the Debtor remains in bankruptcy and a 20-day drop dead provision after the Bankruptcy Case is dismissed.

12. Creditor is still to receive a bonus payment up to $2,000,000.00 which commences if Debtor receives Future Income (as defined at paragraph d. on page 16 of the CSA) from any of his entities in excess of $8,550,000.00. Creditor will receive 17.5% of any Future Income up to a maximum of $2,000,000.00. Future Income shall be calculated beginning on the first day after Debtor has income of $8,550,000.00, such income to Debtor to be calculated beginning the first day after approval of the CSA (April 8, 2016) and continuing through and including December 31, 2024.

13. To ensure that the sale of any of Debtor's entities is fair and conducted in accordance with terms beneficial to all parties, within thirty (30) days after the execution of this Agreement, Debtor will provide a notice to each of the Companies referenced herein acknowledging that the Creditor has a lien on GFS with a copy of notice provided to Creditor's Counsel and Nelson Mullins.



5

14. After the Bankruptcy is dismissed, any dispute over monies to be paid to Creditor in accordance with this Agreement shall be arbitrated as set forth at pp. 16-17 of the CSA, except for issues of non-payment, which may be enforced in the Family Court and/or in the Bankruptcy Court at the option of the Creditor.

15. The Debtor will pay the Creditor's Claim in full no later than the Maturity Date. All payments to the Creditor (excepting the $10,000.00 monthly payments) will be calculated net of any income tax due and payable to the IRS solely related to the funds received by Debtor, which amount of tax withheld is also subject to arbitration if the Bankruptcy Case is dismissed. Any and all payments made to the Creditor will not be subject to federal or state taxes.

16. Until the Creditor's Claim is paid in full, the Debtor will direct the Companies referenced in this Agreement to provide all prepared financial and tax statements directly to Creditor and Creditor's Counsel within 30 days after completion. Creditor and Creditor's Counsel will be provided direct communication with the Companies' representatives. In the event Creditor is not paid in full by December 31, 2019, Debtor agrees to hire a third-party financial services company acceptable to Creditor (*e.g.* Dixon Hughes) to review for accuracy any prepared financial and tax statements of the Companies. After December 31, 2019, Creditor and Creditor's Counsel will be provided direct communication with the third-party accounting firms responsible for the financial information. In addition, until the Creditor's Claim is paid in full, Creditor and Creditor's Counsel will be notified by said Companies of any distributions paid to Debtor; however, in the event Creditor is not paid in full by December 31, 2019, Creditor and Creditor's Counsel will be notified by a third-party accounting firm of any distributions paid to Debtor. In addition, Debtor shall continue to provide Monthly Operating Reports and Quarterly Periodic Reports as per paragraph 4 of the Agreement until Creditor's claim is paid in full.

17. Debtor has the option to prepay the outstanding amount due prior to the Maturity Date. *See* Dixon Hughes Report, at p. 2.

18. The Creditor agrees to release any lien she has been given based upon liquidation and/or distribution from the respective asset, provided she is reasonably satisfied with the price being offered and the proposed distribution. Any such release shall not be unreasonably withheld. The mortgage on the John Galt Property shall be released by the Creditor only when the Creditor's Claim is paid in full.

19. The failure to make any payment due under the Agreement before the expiration of the applicable drop-dead provision constitutes an act of default. The drop-dead provision means if the Debtor fails to make a payment on time, the Bankruptcy Case will be

6

converted to a Chapter 7. If default occurs outside of the Bankruptcy Case, then the Creditor will have access to the Family Court. The failure to pay Creditor's Claim in full by the Maturity Date constitutes an act of default.

20. Events that constitute acts of default will include, without limitation, failure to timely cure a delinquent payment within the 30-day drop dead provision while the Debtor remains in bankruptcy; failure to timely cure a delinquent payment within the 20-day drop dead provision after the Bankruptcy Case is dismissed; failure to pay Creditor's Claim in full by the Maturity Date; and the return of any payment for insufficient funds. In the event of any default that is not timely cured, the John Galt Property will immediately be placed on the market for sale with a realtor selected by the Creditor. The John Galt Property will be listed at a price recommended by the realtor and approved by Creditor and sold at a price approved by the Creditor. In the event of any default that is not timely cured, the sale of the Debtor's interests in GFS will be sold by public sale posted once a month for 3 months in a public forum (e.g. website of Terry Howe). The Debtor will be responsible for any and all attorney fees incurred by the Creditor for action taken as a result of a default. Furthermore, in the event of a default, the Debtor will not object to the appointment of a Federal Court Receiver. Nothing in this paragraph prohibits any and all remedies available to the Creditor in the event of the Debtor's default, to include such relief as may be awarded in the Family Court.

21. If either party is found by a court to be in default under any of the provisions of the Agreement, the defaulting party agrees to reimburse the non-defaulting party for all reasonable attorney's fees and associated legal costs related to prosecuting the default.

22. The Parties agree to revise the CSA to conform to this Agreement and to promptly seek approval of the revision by the Family Court. A copy of the revision is attached. The Debtor agrees to pay Creditor's Counsel's total billing not to exceed $2,000.00 for its participation in the preparation and execution of the modification of the CSA. Debtor will make such payment within thirty (30) days of presentation of Creditor's Counsel's fee statement following the complete execution of the revised CSA by both parties and their counsel.

23. The Parties agree to promptly move before the Bankruptcy Court to have this Agreement approved. During the time it will take to have the Agreement approved and until the Bankruptcy Case is dismissed, the Parties agree to jointly move to extend the time for filing a plan and disclosure statement for 90 days. If necessary, the Parties agree to file a second motion to have the plan and disclosure statement extended for 90 days.

24. Creditor agrees to dismiss with prejudice all contempt petitions filed in the Family Court pre-petition, and Debtor agrees to pay $10,000 as attorney fees to Creditor within 120 days after the Agreement has been approved by the Bankruptcy Court.

25. Debtor agrees to dismiss with prejudice the Petition for Rule to Show Cause that was filed in the Family Court on March 15, 2018.

26. Debtor and Creditor agree not to file any further petition in the Family Court that concern pre-petition contempt claims.

27. After the Agreement has been executed, the Debtor will remain in bankruptcy for 6 months. During that time, the Debtor may move the Bankruptcy Court to have the Bankruptcy Case dismissed and the Creditor will join in that Motion, provided that the order dismissing the Bankruptcy Case will not be entered prior to the 6-month period (except as stated herein below). Notwithstanding the above, Creditor agrees to allow Debtor to immediately file for dismissal upon Creditor's receipt of payment of $500,000, excluding any money received by the Creditor from the sale of the John Galt Property. The Debtor will only be permitted to move for dismissal of his Bankruptcy Case if the following conditions are satisfied:

    i. The various liens contemplated by this Agreement are in place, properly perfected, and enforceable;

    ii. The Debtor must have complied with all provisions of this Agreement at the time the dismissal is requested;

    iii. The revised CSA must be filed as an order of the Family Court; however, this provision is waived if, due to no fault of either Party, the Family Court has not filed an order approving the revision within six (6) months of the execution date of this Agreement.

    iv. Both parties agree not to file an appeal or motion to reconsider or to assert any other challenge with respect to the validity and/or legality of the Agreement or the revised CSA.

28. Once the Bankruptcy Case is dismissed, the Bankruptcy Court will retain jurisdiction to reopen the Bankruptcy Case and to enforce the Agreement until the Creditor's Claim is paid in full.

29. Neither party is bound by this Agreement as it relates to any post-petition actions.

30. If any term or clause of this Agreement is to any extent invalid, illegal, or incapable of being enforced, such term of clause shall be excluded to the extent of such invalidity, illegality or enforceability; all other terms and clauses shall remain in full force.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 21 day of December 2018, 2018.

In the presence of:

_____          _____
WITNESS #1                                        FREDERICK SCOTT ALDERSON, DEBTOR

_____
WITNESS #2

In the presence of:

_____          _____
WITNESS #1                                        COLETTE WINTERS, CREDITOR

_____
WITNESS #2

9