| | |
|---|---|
| **STATE OF SOUTH CAROLINA** ) <br>  ) <br> **COUNTY OF CHARLESTON** ) | **FIRST AMENDED AND RESTATED ASSET PURCHASE AGREEMENT** |

**THIS FIRST AMENDED AND RESTATED ASSET PURCHASE AGREEMENT** (the "**Agreement**") is made and entered into, on June 25, 2020 (the "**Modification Date**"), by and between Watertech Holdings, LLC (f/k/a Watertech Equipment and Sales, LLC), a South Carolina limited liability company ("**Watertech**" and/or the "**Seller**"), and Watertech Asset Acquisition Group, LLC, a South Carolina limited liability company (the "**Buyer**"). The Seller/Watertech and the Buyer are referred to herein each individually as a "**Party**" and collectively as the "**Parties**".

### R – E – C – I – T – A – L – S

**WHEREAS**, the Parties entered into that certain original Asset Purchase Agreement dated January 23, 2020 (the "**Original Agreement**"); and

**WHEREAS**, Watertech was formerly engaged in various commercial concerns and owns certain assets incidental thereto (as more particularly described and set forth herein) all under the business and tradename "Watertech" (such business and assets are collectively referred to herein as the "**Business**"); and

**WHEREAS**, Watertech has filed a Chapter 11 case (the "**Case**") in the U.S. Bankruptcy Court for the District of South Carolina (the "**Court**") (Case No. 20-00662-jw) under 11 U.S.C. Section 101, et seq. (the "**Code**"), and wishes, thereby, to sell and transfer all of its right, title and interest in and to the Business and the Assets, as expressly defined herein below, free and clear of all liens, claims or interests pursuant to a final and unappealable Order of the U.S. Bankruptcy Court ("**Order**") under Section 363 of the Code (the "**Sale**"); and

**WHEREAS**, third-parties, creditors, and the US Trustee, objected to various matters set forth in the Original Agreement (the "**Objections**"); and

**WHEREAS**, the Buyer has chosen to address said Objections directly by proffering this First Amended and Restated Asset Purchase Agreement for acceptance and ratification by the Seller (and subject to approval by the Court); and

**WHEREAS**, the Buyer is now offering additional consideration in exchange for removing certain other consideration from the Original Offer that were deemed controversial and subject to the Objections.

**NOW THEREFORE, BY THESE PRESENTS**, in consideration of the premises set forth herein above and the mutual covenants and promises of the Parties set forth herein below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**1.** <u>Purchase and Sale of Assets</u>. Subject to the terms and conditions contained herein, the Seller hereby sells, assigns, transfers, conveys and delivers to Buyer, and the Buyer hereby purchases from the Seller, all of Seller's collective or individual rights, titles and/or interests in and to the all of its "**Assets**"

in the Sellers possession on the Closing Date **UNLESS** expressly excluded in this Agreement or pursuant to the Buyer's Exclusion Right, as set forth herein, including but not necessarily limited to:

**(a)** All that certain tangible and intangible personal property used by the Seller in the conduct of the Business, to be described further at a later date; and

**(b)** All right, title, and interest in and to any of Seller's designs, schematics, inventions, patents, trademarks, source code, software, applications, electronics, equipment, supplies, machinery or other assets used to conduct the Business, to be described further at a later date; and

**(c)** All codebase/software incidental or related to, and all other content relate to the Business, including without limitation environmental and hazard remediation technology details, marketing collateral, lists, customer lists, customer leads, infrastructure accounts, or any other information and/or assets determined by Buyer to be necessary or required to operate the Business as of the Closing Date, in each case as same exists on and as of the Closing Date; and

**(d)** All accounts receivable of Seller and the Business in existence on and as of the Closing Date (the "**Watertech A/R**"); and

**(e)** Any and all goodwill associated with the Business and/or the Assets (collectively, the "**Goodwill**"); and

**(f)** All right, title, and interest in and to Seller's trade and business names and logos for or relating to the Business, including without limitation any actual formal trademark filings or registrations with the U.S. Patent and Trademark office and any common law trademarks or tradedress, to be described further at a later date (collectively, the "**Tradedress**"); and

**(g)** All right, title, and claim in and to Seller's intellectual property used for, in or in any way relating to the Business, including without limitation any actual formal patent filings or registrations with the U.S. Patent and Trademark office, including, to be described further at a later date (collectively, the "**Technology IP**" and the Technology IP and the Intellectual Property are collectively referred to herein as the "**Intellectual Property**").

**(h)** All right, title, interest and/or claim in or to that certain 5% profit-share vested in Watertech by NanoPure, LLC that resulted from the full and final transfer of that certain exclusive license from the Battelle Memorial Institute, having a place of business in Richland, Washington (the "**Battelle License**") to NanoPure, LLC (the "**Battelle Profit-Share**"); and

**(i)** All right, title, interest and/or claim in or to any consideration owed or profit-share (if any) other than the Battelle Profit-Share, under that certain Exclusive Patent Sublicense Agreement dated October 31, 2017, as amended from time-to-time; and

**(j)** All right, title and interest in and to the Watertech telephone numbers; the Watertech internet website domains, and domain specific email addresses, and the accounts related thereto, used in the Business, to be described further at a later date (collectively, the "**Telephone and Internet Assets**"); and

**(k)**   All business records, books and data in the possession of or used by Seller in the Business, including customer files, customer lists, correspondence with customers and account histories, sales literature and promotional or other material, and documents relating to the Intellectual Property, applications, code, software, materials, supplies and services; and

**(l)**   Those matters on the attached Exhibit 1; and

**(m)**   Notwithstanding anything to the contrary contained herein, any and all properties and claims without exception unless specifically excluded herein.

Transfer of the Seller's collective rights, titles and interests in and to the Assets shall be pursuant to a bill of sale which shall be executed and delivered on the Closing Date.

**2.**   Excluded Assets.  Notwithstanding the foregoing, the following assets shall be excluded from the Assets, and shall be retained by the Seller from and after the Closing Date (collectively, the "**Excluded Assets**"): cash and cash equivalents held by, or held in the bank accounts of, the Seller as of the Closing Date. Any causes of action under Chapter 5 of the Bankruptcy Code.

**3.**   Liabilities.

**(a)**   No Assumption of Liabilities.  Save and except for the Post-Closing Business Obligations (if any) to be described further at a later date, the Seller expressly acknowledges and agrees that the Buyer does not assume and does not agree to assume, and hereby disclaims all liability or obligation for, any and all liabilities or obligations of Seller, whether direct or indirect, known or unknown, absolute or contingent, of any type or nature whatsoever, including but not limited to the following liabilities (all, collectively, the "**Excluded Liabilities**"):

   **(i)**   any claim, liability or obligation for breach or default of any of the contracts of the Seller or the Business, except for the Post-Closing Business Obligations; and

   **(ii)**   any other obligations or liabilities of Seller or the Business, of any type or nature whatsoever, including without limitation those which pertain or relate to: (A) assets other than the Assets; (B) liabilities of Seller other than those included in the Post-Closing Business Obligations; (C) any business operations of Seller prior to the Closing Date (including without limitation operations relating to the Business); and (D) any non-Business operations of Seller at any time prior to or after the Closing Date; and

   **(iii)**   any foreign, federal, state, county or local income, excise, withholding, property, sales, use, franchise or other taxes of any of the Seller, or of the Business, accrued, due and/or owing before the Closing Date; and

   **(iv)**   any costs and expenses incurred by Seller and/or the Business incident to the negotiation and preparation of this Agreement and the consummation of the transactions contemplated hereby; and

   **(v)**   save and except for the tax liabilities specifically attributable to Buyer as set forth in Section 10 below, any tax liability of Seller, or the Business, resulting from the transactions contemplated herein, including, without limitation, any recapture by Seller or the Business of investment tax credit or depreciation; and

3

    **(vi)** any claim, demand, or cause of action, of any kind, not assumed as part of the Post-Closing Business Obligations, relating to: (A) the ownership, control or operation of the Business at any time prior to or after the Closing Date; or (B) the ownership, control or operation of non-business operations of Seller at any time prior to or after the Closing Date; and

    **(vii)** any wages, salary, severance, compensation, payments, bonuses, commissions, vacation or holiday pay, medical benefits, post-retirement medical benefits, fringe benefits, long-term disability benefits, life insurance benefits, any duties, obligations or liabilities arising under any employee benefit plan, policy or practice, whether defined by Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended and in effect ("**ERISA**") or otherwise, relating to the employees or independent contractors of the Business; and

    **(viii)** any wages, salary, severance, compensation, bonuses, commissions, vacation or holiday pay, medical benefits, post-retirement medical benefits, fringe benefits, long-term disability benefits, life insurance benefits, any duties, obligations or liabilities arising under any employee benefit plan, policy or practice, whether defined by Section 3(3) of ERISA or otherwise, accruing at any time prior to or after any date of Closing and/or relating to any employees or independent contractors of Seller's non-Business operations; and

    **(ix)** save and except for those items assumed as part of the Post-Closing Business Obligations, any other amounts due to any employees or former employees or independent contractors of Seller and/or the Business; or

    **(x)** any other liability or obligation of Seller or the Business, of any type or nature whatsoever, save and except for those items assumed as part of the Post-Closing Business Obligations, arising or accruing prior to or after the Closing Date.

**(b)** <u>Assumed Liabilities</u>.  Buyer shall only assume, as post-closing business obligations, the performance obligations of Seller and the Business to be described further at a later date, but Buyer shall NOT assume any other or further liabilities or obligations of Seller of any type or nature whatsoever (the "**Post-Closing Business Obligations**"). Except for the Post-Closing Business Obligations, any and all other liabilities or obligations of Seller and/or the Business shall at all times be and remain the sole and exclusive liabilities and obligations of Seller, and thus are hereby disclaimed in entirety and in perpetuity by the Buyer. Buyer's assumption of the Post-Closing Business Obligations shall be memorialized by an assignment and assumption agreement.

**4.**     <u>Purchase Price; Purchase Price Apportionment; Other Terms</u>.  The "**Purchase Price**" for the purchase and sale of the Assets and the assignment and assumption of the Post-Closing Business Obligations shall be due, payable, allocable and creditable as follows.

    **(a)** <u>Closing Date Payment</u>.  The sum of One Hundred Fifteen Thousand Dollars and 00/100 US dollars ($115,000.00) shall be due and payable by the Buyer to Seller on and as of the Closing Date (the "**Purchase Price**" aka the "**Closing Date Payment**"). This Closing Date Payment is subject to increase due to the need to auction this property through the bankruptcy process.  In the event there is competitive bidding, and Buyer is the winning

bidder, this Closing Date Payment is subject to increase due to said bidding and will be set and established in the amount of Buyer's winning bid.

**(b)** The Purchase Price shall be apportioned in such manner and amounts to be described further by the Buyer at a later date.

**(c)** **The Purchase Price stated above is not refundable, save and except for the requirement that this Agreement is approved by the Court pursuant to a non-appealable final Order as the first and only agreement. However, notwithstanding anything to the contrary contained herein, if for any reason this Agreement is not approved by the Court as the first and only agreement, then in the Buyer's sole discretion the Agreement may either be withdrawn in its entirety or maintained as a back-up contract; and in either of those events, the Purchase Price becomes fully refundable unless this Agreement is ultimately consummated at Closing. Further, if the Buyer's Agreement does not close because another contract was approved by the Court and ultimately closed, then the Buyer shall be entitled to a return of the $10,000 of earnest money paid to secure Seller's patent _____ plus its reasonable legal fees not to exceed an additional $10,000 (subject to Court approval) for its efforts in procuring the Agreement and participating in the Case, all to be paid at Closing by the Seller.**

**(d)** The Closing Date Payment was escrowed with counsel for the Buyer prior to the Seller filing a petition for relief under Chapter 11 of the Bankruptcy Code. Such escrow of the Closing Date Payment is a material term of this agreement such that any upset bidder will be required to similarly escrow funds to be considered a qualified competing bidder.

**(e)** The Buyer hereby reserves the right to modify, and thereby increase, the consideration set forth herein above by including any additional valuable consideration the Buyer may so choose to offer – including, but not limited to, the forgiveness of debt and the value of judgements.

**(f)** Buyer has removed several items of consideration that were present in the Original Agreement. Notwithstanding the foregoing, the Buyer specifically reserves the right to include certain of said items should the need arise during the bidding process. Said reservations are set forth and outlined herein below:

**(i)** The Post-Closing Payments outlined in the Original Agreement are removed but may be included as part of a future bid submitted by Buyer.

**(ii)** The right to waive the claim asserted by David Pobiak, in the approximate amount of $175,000.00, is reserved and said claim may be waived in full or in part.

**(iii)** In response to the objections submitted by Scott Alderson's former spouse, the right to waive the claim payable to Mr. Alderson is NOT reserved and said claim will not be waived as part of this sale agreement.

**(iv)** In response to the objections submitted by Scott Alderson's former spouse, the right to waive the claim payable to Global Financial Services, LLC, in the approximate amount of $625,200.00, is NOT reserved and said claim will not be waived as part of this sale agreement.

    **(g)**    As further consideration to the Seller in exchange for these concessions to the contract, Buyer is offering to increase the purchase price to $250,000, which is five bid increments, as that is set out in the Bid Procedures order entered by the Court in the bankruptcy Case of Seller. If Buyer is the successful bidder that would mean that the Closing Date Payment would be $240,000 (which does not include the already paid $10,000 to secure the Debtor's patent) and would include the $115,000 currently held as earnest money by the Debtor's attorney. Buyer will bring an additional $125,000 to closing to bring its starting bid to the total of $250,000.

**5.**    <u>Closing Date</u>. The Parties acknowledge and agree that the closing of the transactions contemplated by this Agreement, including its exhibits, (the "**Closing**") will occur within 20 business days after the entry of the Order approving this Agreement and the underlying Sale (the "**Closing Date**").

**6.**    <u>Right of Exclusion</u>. If, following the Chapter 11 filing by Watertech, the Buyer chooses to exclude one or more asset from the Assets (the "**Exclusion Right**"), then the Buyer agrees to provide Seller with express written notice of any said excluded Asset (the "**Exclusion Notice**"). However, if no such notice is provided, then all Assets as previously described herein that exist on the Closing Date will be the final list of Assets. Notwithstanding anything herein to the contrary, if any Assets become subject to the Exclusion Right, then the Buyer agrees that the Purchase Price shall remain unchanged and without set-off.

**7.**    <u>Representations and Warranties and Covenants of Seller</u>. Seller jointly and severally represent and warrant to Buyer as follows:

    **(a)**    <u>Organization</u>. Watertech is a limited liability company duly organized, validly existing under the laws of the State of South Carolina.

    **(b)**    <u>Authority</u>.

        **(i)**    Seller has the full power and authority to enter into this Agreement, to consummate the transactions contemplated hereby and to comply with the terms, conditions and provisions hereof. The execution, delivery and performance of this Agreement by Watertech has been duly authorized and approved by all requisite corporate action, subject to the entry of the Order.

        **(ii)**    The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby or compliance with or fulfillment of the terms and provisions hereof or of any other agreement or instrument contemplated hereby, do not and will not conflict with or result in a breach of any agreement to which any of Seller or the Business is a party.

        **(iii)**    This Agreement has been duly executed and delivered by Seller and is the legal and valid obligation of Seller enforceable against Seller in accordance with its terms, subject to the jurisdiction of the Court and the entry of the Order.

    **(c)**    <u>Litigation</u>. Watertech filed a petition for relief under chapter 11 of the United States Bankruptcy Code and is currently effectuating a sale under the oversight of the Bankruptcy Court. Watertech is also the plaintiff derivative shareholder action styled as *Watertech Holdings, LLC f/k/a Watertech Equipment and Sales, LLC by and through its members David L. Stern and David V. Pobiak v. Glenn I. Barrett, Keith J. Johnson, Eric Frische, Robert Fei, Tectrucks, LLC, Rivendell, LLC, Barron Algae, LLC and Cleanstrike, LLC,*

6

Case No.: 2018-CP-10-3412 pending before the Charleston County Court of Common Pleas (the "**Derivative Action**").  With the exception of the matters disclosed herein, there exists no litigation, action, suit, claim or proceeding pending, or to the knowledge of any of the Seller threatened, against or affecting the Business, the Assets and/or the Post-Closing Business Obligations, at law or in equity, before any mediator, arbitrator, court or governmental authority.

**(d)** <u>Taxes.</u>  "**Tax Returns**" means all returns, reports, statements, and forms required to be filed in respect of any tax due to a municipal authority.

    **(i)** Save and except for any taxes owed by Buyers with respect to the purchase and sale transaction set forth herein, or any taxes for which the Buyer is obligated hereunder, Seller has paid, or will pay when due or finally settled (or treated through Seller's bankruptcy), all taxes relating to the Business that are or become due and payable, for all periods up to and including the Closing Date, or that may be occasioned at any time by the payment of the Purchase Price by Buyer.  Seller will file all Tax Returns relating to the Business, for all periods up to and including the Closing Date.

    **(ii)** There are no liens for such taxes on the Assets or the Business.

**(e)** <u>Title to Properties; Encumbrances; Sufficiency of Assets</u>.  Seller, as applicable, has good, valid and marketable title to its respective assets that form the Assets.  None of the Assets are subject to any mortgage, pledge, lien, security interest, encumbrance or charge of any kind.  Seller has the complete and unrestricted power and the unqualified right to sell, assign, transfer and deliver to Buyer subject to the jurisdiction of the Court and the entry of the Order, and Buyer is acquiring, good, valid and marketable title to, the Assets, free and clear of all mortgages, pledges, liens, security interests, conditional sales agreements, encumbrances, claims or charges of any kind pursuant to the Order. The Bill of Sale, Assignment and Assumption Agreement, and the deeds, endorsements, assignments and other instruments being executed and delivered to Buyer by Seller at the Closing are valid and binding obligations of the Seller, enforceable in accordance with their terms, and will effectively vest in Buyer good, valid and marketable title to all the Assets and assign to Buyer the Post-Closing Business Obligations.  To Seller's knowledge, Seller's Assets and Business operations do not infringe upon the rights of any third-party, including without limitation upon the intellectual property rights of any third-party.

**(f)** <u>Ordinary Course Operations; Financials.</u>  The Seller has ceased conducting the Business in the ordinary course, and there has not occurred with respect to the business any material adverse change or event since that date.  The financial data and other information provided to Buyer in the context of due diligence, as delivered to Buyer prior to the Closing of this Agreement, are true and correct in all material respects, and reflect the actual financial status, working capital, profits and losses, and the status of the Business as of the dates such documents were provided to Buyer.

**(g)** <u>Consents</u>. Except the Bankruptcy Court's approval of Watertech's motion to sell assets based upon this APA, no consent(s) are required from any third-party person or entity to authorize the transactions contemplated by this Agreement, including without limitation the purchase and sale of the Assets and the assignment and assumption of the Post-Closing Business Obligations (collectively, the "**Consents**").  Seller covenants and agrees to obtain and deliver to Buyer at Closing all Consents (if any), the delivery of which at Closing shall

be a condition precedent to Buyer's performance of the terms and conditions of this Agreement and Buyer's consummation of a Closing hereunder.

**(h)** <u>No Reliance</u>. Except for the representations and warranties contained in this Agreement, Buyer has not relied upon, and has not been induced to enter into this Agreement by, any other representations or warranties or any other information made on behalf of any of the Seller. The Parties, with their consultants and representatives, are sophisticated business persons, and have had opportunity to be represented by their own counsel.

**(i)** <u>Post-Closing Operations</u>. Post-closing, the Seller will cease operations except for the purposes of closing the Bankruptcy case and assisting the Buyer, at the buyers expense, in any reasonable matters it may require that involve the Assets.

**8.** <u>Representations and Warranties of Buyer</u>. Buyer represents and warrants to Seller as follows:

**(a)** <u>Organization</u>. Buyer is a limited liability company duly organized and validly existing and in good standing under the laws of the State of South Carolina. Buyer has the power and authority to own its own properties and assets and to carry out its businesses and operations.

**(b)** <u>Authority</u>.

**(i)** Buyer has the full power and authority to enter into this Agreement, to consummate the transactions contemplated hereby and to comply with the terms, conditions and provisions hereof. The execution, delivery and performance of this Agreement by Buyer has been duly authorized and approved by all requisite action.

**(ii)** The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby or compliance with or fulfillment of the terms and provisions hereof or of any other agreement or instrument contemplated hereby, do not and will not conflict with or result in a breach of any agreement to which Buyer is a party.

**(iii)** This Agreement has been duly executed and delivered by Buyer and is the legal, valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms, subject to the jurisdiction of the Court and the entry of the Order.

**(c)** <u>Litigation</u>. There exists no known litigation, action, suit, claim or proceeding pending against or affecting Buyer, at law or in equity, before any court or governmental authority other than as disclosed herein.

**(d)** <u>No Reliance</u>. Except for the representations and warranties contained in this Agreement, Buyer has not relied upon, and has not been induced to enter into this Agreement by, any other representations or warranties or any other information made on behalf of Seller. The Parties with their consultants and representatives are sophisticated business persons, and have had opportunity to be represented by their own counsel.

**9.** <u>Conditions to Closing</u>.

**(a)** The obligations of Buyer to be performed under this Agreement and its exhibits are subject to the fulfillment, on or before the Closing Date, of the following conditions precedent:

**(i)** <u>Representations and Warranties Correct.</u>  All representations and warranties of Seller made in this Agreement or in any certificate, schedule, instrument or other document delivered pursuant to this Agreement or in due diligence in advance of the execution of this Agreement shall be true and correct in all material respects, including without limitation relating to financial performance and status of the Business and as if made and/or updated on and as of the Closing Date.

**(ii)** <u>Performance.</u>  Seller shall have performed and complied with all covenants, terms and conditions required by this Agreement to be performed or complied with by Seller prior to or on the Closing Date, in all material respects, including obtaining the Order.

**(iii)** [INTENTIONALLY OMITTED]

**(iv)** <u>Company Proceedings.</u>  Watertech shall have delivered to Buyer copies of resolutions of such Seller, sufficient in the judgment of Buyer's counsel to authorize the performance of the transactions hereunder by Watertech.

**(v)** <u>Other Consents.</u>  All Consents and approvals necessary for the valid consummation of the transactions contemplated by this Agreement and its exhibits, if any, shall have been obtained by Seller and delivered to Buyer, and all certifications and assurances reasonably required by Buyer with respect thereto shall have been obtained and delivered.

**(vi)** <u>Adverse Proceedings.</u>  No action, suit, or proceeding shall be pending or threatened before any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or before any arbitrator relating to the Assets and/or the Business and/or any Post-Closing Business Obligations other than those disclosed in this Agreement.

**(vii)** <u>Searches.</u>  Buyer shall procure, at Buyer's sole expense, the following: UCC, lien, judgment, tax and bankruptcy searches as against each of the Seller and the Business, prior to the Closing; and the Seller represents that such searches shall show no liens, judgments, taxes due or bankruptcies except the Case within five (5) business days of the Closing Date, and showing that there are no liens against the Assets that are not being released as part of the Court order approving this sale.

**(viii)** <u>Sales Taxes.</u>  Any sales tax delinquency of Seller, relating to the Business, from any time or period, shall be paid in full by Seller in advance of Closing.

**(b)** The obligations of Seller to be performed under this Agreement are subject to the fulfillment, on or before the Closing Date, of the following conditions precedent:

**(i)** <u>Representations and Warranties Correct.</u>  All representations and warranties of Buyer in any certificate, exhibit, schedule, instrument or other document delivered pursuant to this Agreement, shall be true and correct in all material respects as if made on the applicable date of Closing.

**(ii)** <u>Performance.</u>  Buyer shall have performed and complied with all covenants, terms and conditions required by this Agreement to be performed or complied with by it prior to or on the applicable date of Closing.

9

      **(iii)**    Company Proceedings. If reasonably requested by Seller in writing prior to the Closing Date, Buyer shall have delivered to Seller copies of resolutions and other company proceedings of Buyer sufficient to authorize the transactions by Buyer hereunder.

**10.**    Sales Tax Compliance. Buyer and Seller shall cooperate to comply with all applicable state sales tax/bulk sales laws, including, without limitation, Section 1141(c) of the South Carolina State Tax Law and any commensurate laws of the State of South Carolina. Buyer shall file any notices required to be provided to the South Carolina State Department of Taxation Bulk Sales Unit or any commensurate Agency in the State of South Carolina (each, a "**Bulk Sales Unit**") at least ten (10) business days prior to the Closing Date (each, a "**Bulk Sales Filing**"). In the event a Bulk Sales Filing identifies sales tax remittance delinquencies by any Seller and/or the Business (any, a "**Sales Tax Delinquency**"), Seller shall jointly and severally be liable for and immediately pay and resolve the Sales Tax Delinquency directly with the applicable state agency, such that all Sales Tax Delinquency is paid in full and a release thereon received from the applicable state tax department, on or prior to the Closing Date. Seller shall, jointly and severally, defend, indemnify and hold harmless Buyer from and against any and all Sales Tax Delinquency, in perpetuity and in entirety and whether arising prior to or after any Closing, and Buyer may set-off against the Watertech Payments for any such liabilities incurred. In the event a Bulk Sales Filing generates sales taxes due as a result of the purchase and sale of tangible non-exempt Assets, such sales tax payment obligation shall be the responsibility of Seller, which shall tender payment of same contemporaneously with the Closing.

**11.**    Other Agreements.

    **(a)**    Further Assurances. From time-to-time after the execution of this Agreement, Seller and Buyer shall execute and deliver to other Party such other instruments of conveyance and transfer and such other documents as Buyer or Seller may reasonably request or as may be otherwise necessary to more effectively consummate the transactions contemplated by this Agreement, including without limitation the conveyance and transfer of the Assets to, and vesting of the Assets in, Buyer, and to put Buyer in possession of the Assets and each part thereof.

    **(b)**    Negotiated Agreement. This Agreement and the instruments to be executed pursuant to this Agreement are the result of negotiations between Seller and Buyer. Accordingly, none of the foregoing Parties shall be deemed to be the author of this Agreement or the resulting documents, and there shall be no presumption that this Agreement or any of such documents are to be construed for or against any such Party on the basis of the authorship of the documents.

**12.**    Intentionally Omitted.

**13.**    Closing Documents

    **(a)**    Seller's Obligations. On the Closing Date, Seller shall deliver to Buyer physical possession of all Assets, and shall execute and/or deliver to Buyer all of the following:

      **(i)**    Resolutions. Copies of resolutions of Watertech certified by the president/manager of same, authorizing the execution, delivery and performance of this Agreement and the transactions contemplated hereby.

  **(ii)**  <u>Bill of Sale; Assignment and Assumption Agreement</u>.  The Bill of Sale and the Assignment and Assumption Agreement, with each properly executed.

  **(iii)**  <u>Consents</u>.  Any and all Consents.

**(b)**  <u>Buyer's Obligations</u>.  On the Closing Date, Buyer shall deliver to Seller the following:

  **(i)**  <u>Resolutions</u>.  If requested by Seller in writing, Buyer shall deliver copies of resolutions of Buyer authorizing the execution, delivery and performance of this Agreement and the transactions contemplated hereby; and

  **(ii)**  <u>Payment</u>.  The Closing Date Payment.

**(c)**  <u>Joint Obligations</u>.  On the Closing Date, the Parties will deliver each to the other the certificates, records, schedules, exhibits, and the other documents required by the terms of this Agreement.

**14.**  <u>Seller's Restrictive Covenants</u>.

  **(a)**  <u>Acknowledgments of the Parties</u>.  The Seller acknowledges, agrees and expects that the Buyer will continue to invest significant time, money and resources to develop and maintain the Assets and the Business, including without limitation the Goodwill associated with the Business and its Customers/Suppliers (each as defined below).

  **(b)**  <u>Restrictive Covenants</u>.  The Seller hereby agrees that as soon as possible, the Seller shall wind-up its final outstanding business and file articles of dissolution with respect to the Seller, its subsidiaries and its directly affiliated entities.

**15.**  <u>Additional Provisions</u>.

  **(a)**  [INTENTIONALLY OMITTED]

  **(b)**  <u>Notices</u>.  All notices given in connection with or pursuant to this Agreement shall be in writing and shall be effective only if delivered personally to, or sent by registered or certified mail, postage prepaid, return receipt requested, to the Parties as follows:

    To Buyer:

     Watertech Asset Acquisition Group, LLC
     In care of:
     875 Walt Miller Street, Suite A1
     Mount Pleasant, SC 29464
     Attention:  Scott Alderson

    To Watertech:

     Watertech Holdings, LLC (f/k/a Watertech Equipment and Sales, LLC)
     In care of:
     4360 Corporate Rd.
     Suite 100
     North Charleston, SC 29405

Attention:  Bob Fei

**(c)** <u>Assignment; Successors and Assigns</u>.  This Agreement or any right hereunder shall not be assigned by any Party without the written consent of the other Party(ies).  Subject to the previous sentence, this Agreement shall inure to the benefit of and be binding upon the successors, heirs, distributees, legal representatives and assigns of the respective Parties hereto.

**(d)** <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties hereto relating to the transactions contemplated hereunder, and may not be changed except by an instrument in writing signed by all Parties and approved by the Court.  This Agreement may be executed in any number of counterparts and each counterpart shall constitute an original instrument, but all such separate counterparts shall constitute only one and the same instrument.

**(e)** <u>Partial Invalidity</u>.  In case any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision or provisions had never been contained herein.

**(f)** <u>Titles and Headings</u>. Titles and headings to sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

**(g)** <u>Third Party Beneficiaries</u>.  Each Party hereto intends that this Agreement shall not benefit or create any right or cause of action in or on behalf of any person or entity other than the Parties hereto, including their proper successors and assigns.

**(h)** <u>Waiver of Jury Trial</u>.  EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY.

**(i)** <u>Commissions, Brokers and Finders' Fees</u>.  Each of the Parties represents that the negotiations relative to this Agreement and the transactions contemplated hereby have been carried on by Seller directly with Buyer and in such manner as not to give rise to any claims against any of the Parties hereto for a brokerage commission, finders' fee or other like payment.  Insofar as any such claims are made which are alleged to be based on an agreement or arrangements made by, or on behalf of, a Party, such Party agrees to defend, indemnify and hold the other party harmless from and against all such liability, loss, cost, charge or expense, including reasonable counsel fees, as may arise therefrom.

**(j)** <u>Expenses</u>.  Each Party hereto will bear the legal, accounting and other expenses incurred by such Party in connection with the negotiation, preparation and execution of this Agreement and the transactions contemplated hereby.

**(k)** <u>Waiver of Compliance</u>.  Any failure of Seller, on the one hand, or Buyer, on the other, to comply with any obligations, covenants, agreements or conditions herein may be expressly

waived in writing by Buyer or Seller(s), respectively, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

**(l)** <u>Confidentiality; Public Announcement</u>. With respect to all information disclosed by either Party to the other in connection with this Agreement, and its exhibits, and not contained herein, are confidential and may only be disclosed by the parties to their respective directors, advisers and employees on a need to know basis. Notwithstanding the foregoing, any disclosure of information required by the Bankruptcy Court with respect to the transactions contemplated herein shall not be a breach of this confidentiality obligation; and, further, upon the Closing, Buyer shall have the right and discretion to draft and disseminate a public announcement and/or press release describing the purchase of the Business by Buyer and the industry-related consequences thereof.

**(m)** <u>Non-Disparagement</u>. No Party will disparage or otherwise publish or communicate "derogatory" statements or opinions about the other Party or such Party's businesses or personnel, be it verbally or in writing. For purposes of this Agreement, "derogatory" means a statement that detracts from a Party's character, standing, or reputation.

**(n)** <u>Governing Law; Etc</u>.

  **(i)** This Agreement and the legal relations among the Parties hereto shall be governed by and construed by the Court in accordance with the laws of the State of South Carolina, without regard to any conflicts of law doctrine.

  **(ii)** Any action or proceeding based on this Agreement shall be brought only in the Court which shall maintain jurisdiction over the Case and this Agreement to the fullest extent allowable. Buyer and Seller hereby submit to the exclusive personal jurisdiction of the Court, and waive any rights to contest same including without limitation based upon allegations of inconvenient forum. In the event of litigation or other formal proceedings involving this Agreement, the non-prevailing party shall reimburse the prevailing or substantially prevailing party for all costs and expenses, including reasonable attorneys' fees and expenses, incurred in connection with any such litigation, including any appeal. In the event any party requires equitable relief, including without limitation due to any breach by any of Seller of the restrictive covenants set forth in Section 14 hereinabove, said party may seek preliminary or permanent injunctive relief including without limitation by seeking a temporary restraining order, on an ex-parte basis, and without any requirement to post a bond, which requirement (if any) is hereby deemed waived.

**[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]**
(signatures on following page)

**IN WITNESS WHEREOF**, the Parties hereto have executed this First Amended and Restated Asset Purchase Agreement, as of the Modification Date first set forth herein above.


**BUYER**:

WATERTECH ASSET ACQUISITION GROUP, LLC

*/s/ Steven Gareleck*

By: Steven Gareleck
Its: Manager




**SELLER**:

WATERTECH HOLDINGS, LLC (F/K/A WATERTECH EQUIPMENT AND SALES, LLC)


_____
By: _____
Its: Managing Member

# EXHIBIT 1
## TO THE FIRST AMENDED AND RESTATED
## ASSET PURCHASE AGREEMENT

## THE ASSETS

<u>Intellectual Property</u>

<u>Patent Filing</u>

| | |
|---|---|
| EFS ID: | 28998854 |
| Reference Number: | 44873-0002WO1 |
| Confirmation Number: | 1153 |
| Int'l Application Number: | PCT/US17/28991 |

<u>Telephone and Internet Assets</u>

<u>Customers and Consumer Lists/Accounts</u>

- Any and all prospect and potential customer lists and accounts (including without limitation email address lists), aggregated, collected, maintained or procured by Seller during or for the operation of the Business, through and including the Closing Date, including without limitation customer and consumer names, addresses, telephone numbers, fax numbers, emails and account histories, etc.

<u>Goodwill</u>

- Any and all goodwill associated with the Business on and as of the Closing Date

<u>Environmental and Hazard Remediation Technology</u>

**Additional Items**:
The Watertech derivative lawsuit
That certain Exclusive Patent Sublicense Agreement dated October 31,2017, as amended from time-to-time
The NGI settlement agreement
The NGI promissory note
The NGI stock certificates
All rights related to NDAs, non-competition agreements, ownership of inventions, etc from employment, consulting or subscription agreements between Watertech or any of its subsidiaries and any employee, consultant, contractor, unitholder or creditor.
Any restrictive covenant agreements (NDAs, non-competition agreements, etc.)
All consulting agreements between Watertech, or any of its subsidiaries, and any consultant
All employment agreements between Clean Earth Enterprises, or any of its subsidiaries, and any employee
All consulting agreements between Clean Earth Enterprises, or any of its subsidiaries, and/or any consultant
All organizational documents, including but not limited to: operating agreements, articles of organization, by-laws and articles of incorporation for Watertech and its subsidiaries, Clean Earth Enterprises and its subsidiaries or any other company in which Watertech holds any ownership interest
All organizational documents and agreements involving Algae to Omega LLC, Algae to Omega Holdings, Algae Matrix Technologies, Clean Earth Algae USA, etc.

All non-disclosure and/or non-compete agreements between Watertech or its subsidiaries, Clean Earth Enterprises or its subsidiaries or any other company in which Watertech holds any ownership interest and its employee, consultant or any other individual doing work on behalf of such entity.